IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARK CALLAHAN, | : |
| Plaintiff, | : Case No. 2:22-cv-02369 |
| v. | : Judge Graham |
| FANATICS, INC., *et al.*, | : Magistrate Judge Jolson |
| Defendants. | : |

## OPINION & ORDER

Plaintiff Mark Callahan brings this age discrimination suit related to his removal from the position of Account Manager for Defendants Fanatics, Inc. and Fanatics Retail Group Fulfillment, LLC ("Fanatics"). Callahan asserts claims for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and under state law, Ohio Revised Code § 4112.02.

This matter is before the Court on Fanatics' motion for summary judgment. For the reasons stated below, Fanatics' motion for summary judgment is **DENIED**.

I.   Background

   A.   Facts

Fanatics designs, develops, manufactures, and sells licensed sportswear from major sports leagues, including the NFL, MLB, NCAA, MLS, and the NHL. *See* Larrabee Tr. 12. Fanatics partners with sports and athletic brands, like Nike, to sell licensed sportwear in those brands. *See* West Tr. 21. Any retailer wanting to sell licensed sportswear from sports leagues who are exclusively partnered with Fanatics must purchase the products from Fanatics. *See* Larrabee Tr. 13-14. Fanatics has about 1,200 customers in the United States, ranging from small retail

stores to larger retailers. *See id.* at 14. Fanatics manages multiple large retailer accounts, including Dick's Sporting Goods. *See* Buckley Tr. 12.

Callahan was about 54 years old when he began working for Fanatics after Fanatics acquired VF Licensed Sports in 2017. *See* Callahan Tr. 22. Prior to the acquisition, Callahan had worked for VF Licensed Sports since 1993 as a sales representative and account manager. *See id.* at 19. As part of Fanatics' acquisition of VF Licensed Sports, Fanatics retained VF Licensed Sports' employees. *See id.* at 22. Callahan was an account manager at Fanatics. *See* Buckley Tr. 13; Larrabee Tr. 28.

Beginning in 2010, Callahan managed the Dick's Sporting Goods account for VF Licensed Sports. *See* Larrabee Tr. 31-32; Callahan Tr. 23. He continued to manage that account for Fanatics. Callahan was responsible for overseeing the account's day-to-day business matters, scheduling meetings, generating business growth, communicating with Fanatics' internal management and with Dick's Sporting Good representatives, anticipating and solving problems with the account, and developing strategies to improve Fanatics' overall service to the account. *See* Buckley Tr. 13-14; Callahan Tr. 39-40.

Callahan reported to Brent Buckley, who was the Channel Sales Director. *See* Callahan Tr. 24-25. Callahan reported to Buckley until his termination. *See id.* at 25. Buckley reported to Jade Larrabee, Vice President of Sales, and she reported to Rusty West, Chief Sales Officer. *See* West Tr. 23-24.

In 2019, Fanatics gained the rights to sell Nike products and began selling Nike products in 2020. *See id*. at 21. Fanatics entered into several other brand licensing agreements while Callahan was working for Fanatics. *See* Callahan Tr. 29. The new agreements and partnership with Nike caused Fanatics to increase the responsibilities and sales goals for salespersons and

managers. *See id.* During Callahan's employment at Fanatics, he met or exceeded his yearly sales goals for his Dick's Sporting Goods account. *See* Larrabee Tr. 32. Callahan increased the revenue for the account from $16 million in 2019 to about $25 million in 2020. *See* Callahan Tr. 31-32. During Callahan's final year of employment in 2021, his sales goal was $46 million. *See id.* at 38. He sold $39 million by mid-September when he was terminated. *See id.*; Buckley Tr. 27. Buckley stated that Callahan was on track to meet and exceed his sales goal had he not been terminated. *See* Buckley Tr. 27. According to Larrabee, almost every salesperson was exceeding their sales goals because of the new business, not because of their performance increasing. *See* Larrabee Tr. 49.

Callahan never received any written performance reviews and Buckley never gave Callahan a periodic written performance review as his manager. *See* Buckley Tr. 22. Buckley stated that he never told Callahan verbally or in writing that he was not meeting his job expectations. *See id.* at 47. Callahan contends he was not aware of any complaints Dicks Sporting Goods made to Fanatics about Callahan's performance. *See* Callahan Tr. 40.

Fanatics' leadership team met in June of 2021 to review the personnel on Fanatics' sales team. *See* West Tr. 16. The leaders met specifically to decide whether Fanatics had the "right talent on the right account with the right competencies." *Id.* Buckley, West, and Larrabee were present at the meeting, along with other leaders. *See id.* at 17; Buckley Tr. 42. At the meeting, Buckley brought up Callahan's account with Dicks Sporting Goods and recommended Fanatics "go in a different direction." Buckley Tr. 43. Buckley discussed with the leaders at the meeting that Callahan's account would require new responsibilities and increased management because of the new business coming into the account. *See id.* at 44. Larrabee agreed that Callahan's account was heading in a different direction and that Callahan was "not a good fit for the role." Larrabee

3

Tr. 69. West did not disagree with Buckley or Larrabee. *See* West Tr. 27. After the meeting, Buckley and Larrabee decided to terminate Callahan. *See* Buckley Tr. 28; Larrabee Tr. 21.

Callahan was not informed of his termination until September 16, 2021, on a virtual call with Buckley, Larrabee, and Summer Wilson, who participated as Fanatics' Human Resources representative. *See* Callahan Tr. 43-44, 47. Wilson told Callahan that Fanatics was terminating his employment. *See id.* at 47. She said his termination was not due to his performance, but because Fanatics was heading in a "different direction." *Id.* Callahan asked the meeting participants if there wasn't "a place in the company" for him, but Wilson said there were no openings. *See id.* at 49–50. Callahan soon found that Fanatics did have open positions, but he did not apply for any of them. *See id.* at 53. Wilson told Callahan that his last day would be October 1, 2023, but Fanatics shut off his computer access by noon on September 17, 2021. *Id.* at 60-61. Wilson sent Callahan his separation agreement after his access had been revoked, but Callahan never signed the agreement. *See id.* at 64.

Fanatics promoted Ashley Guittar, who is younger than Callahan, to fill Callahan's position. *See id.* at 133. Callahan was 58 years old when he was terminated.

B.   **Procedural History**

Callahan timely filed a charge with the Equal Employment Opportunity Commission after his termination and timely filed his complaint in this case on June 2, 2022.

The first and second causes of action in the complaint are for age discrimination under the ADEA and under Ohio law. *See* 29 U.S.C. § 623(a); O.R.C § 4112.02(A). The complaint alleges that Fanatics discriminated against Callahan on the basis of age by terminating his employment with Fanatics and refusing to transfer, rehire, or recall him into other available positions for which he was qualified. The third cause of action in the complaint asserts aiding

4

and abetting liability under Ohio Revised Code § 4112.02(J). The complaint alleges that Fanatics aided, abetted, incited, compelled, and/or coerced unlawful discriminatory acts towards Callahan.

The parties have now conducted discovery and Fanatics has moved for summary judgment.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant

5

probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Domingez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

**III. Discussion**

    **A. Age Discrimination in Employment Act Claim**

The ADEA prohibits an employer from discharging employees on the basis of their age. 29 U.S.C. § 623(a). Callahan has not offered any direct evidence of age discrimination. Therefore, his claims are examined under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The framework requires a plaintiff to first establish a *prima facie* case of age discrimination. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the employment action. *Id.* If the defendant offers a legitimate,

nondiscriminatory reason, the plaintiff then has an opportunity to prove that the reasons offered by the defendant were a pretext for discrimination. *Id.*

Callahan's claim for age discrimination can be separated into two theories based on the alleged adverse action: Fanatics' failure to transfer and/or rehire, and its termination of Callahan's employment. The Court will analyze each theory in turn below.

### 1. Failure to Transfer and/or Rehire

To establish a *prima facie* case for age discrimination based on failure to transfer and/or rehire, Callahan must demonstrate that he: (1) is a member of a protected age group, (2) is qualified for the rehire or recall position, (3) applied for the available position or can establish that Fanatics was otherwise obligated to consider him, and (4) that the position went to a younger person outside the protected class or that other reasonable evidence exists to infer that he was denied a position because of his age. *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989).

Fanatics challenges Callahan's ability to satisfy the third element. In particular, Fanatics emphasizes that Callahan never applied for any positions after his termination. *See* Callahan Tr. 53. Fanatics argues that this fact alone causes Callahan's claim to fail.

Callahan responds by arguing that Fanatics acted deceptively about whether any positions were available. During his termination meeting, Callahan asked if there was still "a place in the company" for him, and he was told by HR representative Wilson that there were no openings. *See id.* at 49–50. The next day after his termination, Callahan went on LinkedIn and found several job openings he would be interested in at Fanatics. Those included positions in sales and management. *See id.* at 50-53.

7

The Court finds that Fanatics is not entitled to summary judgment on this issue. It is true that a formal application is generally required for a plaintiff to assert a failure to transfer or rehire claim. *See Wanger*, 872 F.2d at 145*; Grant v. Harcourt Brace Coll. Publishers*, 191 F.3d 452 (6th Cir. 1991) (a "generalized expression of interest in a position will not qualify as an application for employment"). But an exception exists if an employer creates an atmosphere in which employees understand that applying for a position would be fruitless. *Wanger*, 872 F.2d at 145. This exception applies when "gross and pervasive discrimination" causes an employee to reasonably perceive that applying for an open position would be futile. *Id.*; *Russell v. Three Pillars*, No. 21-1481, 2022 WL 351770, at *5 (6th Cir. Feb. 7, 2022); *Monday v. La-Z-Boy Inc.*, No. 1:22-CV-00075-CHS, 2023 WL 6881066, at *12 (E.D. Tenn. Oct. 18, 2023).

Callahan has submitted sufficient evidence at this stage to show he reasonably perceived that applying for an open position would have been futile. Wilson expressly told him that Fanatics had no job openings, when in fact the company had several openings for which Callahan was qualified. Wilson's blatant misrepresentation could be reasonably interpreted as meaning that Fanatics would not employ Callahan under any circumstances.

A jury could further connect Fanatics' motivation to age discrimination. As will be discussed below, Callahan has demonstrated that the stated reasons for his termination – he was not a "good fit" and Fanatics was going in a "different direction" – could be found to be pretext for discrimination. Further, Callahan testified that prior to his termination, he was aware of three other account managers, all over the age of 50, whom Fanatics had recently "abruptly fired" under conditions similar to his. Callahan Tr. 58, 71–73 (explaining that the other firings followed the "same pattern as his" and that the fired employees received no warning or opportunity to save their jobs); Ron Prusinski Decl., ¶¶ 8–9 (stating that when he was fired at age 58, he was

exceeding his sales goals and that he was told that Fanatics was "going in a different direction"). A jury could find from all of this evidence that Fanatics was systematically firing older account managers and thereby had created an atmosphere of pervasive discrimination which reasonably caused Callahan to believe that applying for an open position would be futile. *See Allen v. Deerfield Mfg. Inc.*, 424 F. Supp. 2d 987, 994 (S.D. Ohio 2006) (formal application not needed to sustain a claim where plaintiff could show a "continuing pattern or practice of discrimination").

The Court thus denies Fanatics' motion for summary judgment as to the failure to transfer and/or rehire claim.

### 2. Termination

To establish a *prima facie* case for age discrimination based on termination, Callahan must demonstrate that he: (1) is a member of a protected class, (2) was qualified for his job, (3) suffered an adverse employment action, and (4) was replaced by a person outside the protected class or treated differently than similarly situation non-protected employees. *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023).

Fanatics concede that Callahan can establish a *prima facie* case of age discrimination based on his termination. *See* Doc 17 at PAGEID 73. Callahan is a member of a protected class as a person over the age of 40, was qualified for the job, terminated from the position, and replaced by a younger individual. Callahan has thus established a *prima facie* case for age discrimination based on his termination.

The burden shifts to Fanatics to establish a legitimate, nondiscriminatory reason for why Fanatics terminated his position. Plaintiff does not dispute that Fanatics has met its burden. Fanatics' partnership with Nike led to increased responsibilities for Callahan's Dicks Sporting Goods account – "it was just going to take another level of evolution of managing the account."

9

Buckley Tr. 45. Given the "different direction" things were headed, Buckley believed Callahan no longer had the "competencies" required to service the account. *Id.* at 43-45; West Tr. 27. Both Larrabee and West agreed with Buckley. Larrabee Tr. 69; West Tr. 27.

The burden now shifts to Callahan to show that the legitimate reason offered by Fanatics was not its true reason but was a pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 428, 253 (1981). Pretext can be established directly by showing that "a discriminatory reason more likely motivated the employer" or indirectly by showing that "the employer's proffered explanation is unworthy of credence." *Id.* at 256. A plaintiff usually demonstrates pretext by showing the asserted reason why they were terminated either had no basis in fact, was insufficient to warrant termination, or did not actually motivate the decision to terminate his employment. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Callahan argues that Fanatics' proffered reasons for his termination have no basis in fact and did not actually motivate the adverse action. *See* Doc. 21 at PAGEID 1367. Callahan contends that Fanatics' stated reasons are false because he had proved himself capable of handling the increased Nike sales business. He further argues that Fanatics' purported reasons are inconsistent and shifting.

The Court finds that Callahan has demonstrated pretext. Fanatics' alleged reasons for termination are vague and not supported by specific facts in the record. Fanatics contends that Callahan's account was going in a "different direction," but it does not clearly explain what the new direction was or why Callahan would be unable to keep pace. To the extent the new direction involved increased expectations and responsibilities with respect to Nike sales, a jury could readily find pretext. Callahan, who was a 28-year sales veteran, met and exceeded his

increased sales goals resulting from the Nike partnership beginning in 2019. *See* Callahan Tr. 31-32, 38; Buckley Tr. 27. A jury could find that Fanatics' assertion that Callahan would not be up to the challenge had no basis in fact.

The Court recognizes Fanatics' position that Callahan's meeting his sales goal had less to do with his abilities and more to do with the tremendous impact the Nike partnership had on sales. A jury should decide who to believe, particularly when Fanatics has done no more than offer vague assertions at the summary judgment stage. Fanatics claims that Callahan lacked required "competencies," but it fails to identify exactly what competencies he lacked. Similarly, it claims he was "not a good fit for the role" but does not explain why. The Court finds that Fanatics' reasons for termination – while facially nondiscriminatory – are not sufficiently concrete and factually supported to withstand the pretext analysis at summary judgment.

In the briefs, counsel for Fanatics interprets the testimony of Buckley, Larrabee, and West to mean that Callahan lacked the necessary "skill set" to continue at his job. Doc. 17 at PAGEID 77; Doc. 24 at PAGEID 1505. But none of those individuals used the term "skill set" or relied on it as a reason for termination. And even if they did mean "skills" when they said "competencies," it remains that Fanatics has not identified any specific skill or set of skills which Callahan lacked.

The Court further finds that Fanatics has given inconsistent and contradictory reasons for Callahan's termination. Larrabee, who served as Fanatics' Rule 30(b)(6) witness, stated in her deposition that Fanatics terminated Callahan because of poor job performance. *See* Larrabee Tr.

55. West testified in his deposition that Callahan was not performing where Fanatics needed him to perform and that Callahan was not meeting expectations.[1] *See* West Tr. 57.

In contradiction to Larrabee and West, Buckley testified that Callahan never failed to meet his expectations and that he met every goal set for him. *See* Buckley Tr. 71-72, 74. And in its motion for summary judgment, Fanatics did not cite poor job performance as the reason for Callahan's termination. Instead, it argued that Callahan was "not a good fit for the role going forward" and that the account was heading in a "different direction." Doc. 17 at PAGEID 77–78.

"Inconsistency in an employer's explanation of the reasons for an adverse action raises an inference of pretext that must be drawn, at summary judgment, in favor of the nonmovant." *Coburn v. Rockwell Automation, Inc.*, 238 Fed. App'x 112, 122 (6th Cir. 2007) (internal quotation marks and alterations omitted). Here, a jury could reasonably infer the inconsistent testimony of Fanatics' witnesses that their stated reasons for terminating Callahan are pretextual and conceal a discriminatory purpose. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147–48 (2000).

Moreover, even if Callahan's job performance is Fanatics' proffered reason for termination, a jury could find that it is not supported by the facts. Fanatics has not offered any record of a negative performance review of Callahan, and Buckley testified that Callahan never failed to meet his expectations and that he met every goal set for him. *See* Buckley Tr. 71-72, 74. Callahan met every objective goal set by Fanatics, and no additional, subjective goals were communicated to him. *See id.* As noted above, he met or exceeded his increased sales goals in the three years prior to his termination. *See* Larrabee Tr. 32; Buckley Tr. 27.

---

[1] Even here, Larrabee and West were not specific in describing how Callahan's performance was poor or how he failed to meet expectations.

In sum, the Court concludes that a jury could reasonably find that Fanatics' proffered reasons for termination are a pretext for age discrimination.

B.  **State Law Claims**

Callahan asserts state law claims for age discrimination and aiding and abetting discrimination. *See* O.R.C. § 4112.02(A),(J). Fanatics argues that these claims fail because Callahan's federal age discrimination based on termination fails. However, because the Court denies summary judgment on the federal claim, Fanatics' motion for summary judgment as to the state law claims are also denied.

IV.  **Conclusion**

Accordingly, Fanatics' motion for summary judgment (doc. 17) is **DENIED**.

*s/ James L. Graham*
JAMES L. GRAHAM
United States District Judge

DATE: March 12, 2024